IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TEMPUR-PEDIC
INTERNATIONAL, INC.                                    PLAINTIFF

        v.                 Civil No. 07-2015

WASTE TO CHARITY, INC.;
BROCO SUPPLY, INC.; JACK
FITZGERALD; ERIC VOLOVIC;
HOWARD HIRSCH; THOMAS SCARELLO;
NELSON SILVA; CLOSE OUT
SURPLUS AND SAVINGS, INC.;
and ERNEST PEIA                                        DEFENDANTS

### MEMORANDUM OPINION & ORDER

Plaintiff filed its Complaint (Doc. 1) on February 13,
2007, an Amended Complaint (Doc. 5) on February 21, 2007, and
its Second Amended Complaint (Doc. 57) on April 13, 2007.
Plaintiff seeks either recovery, or money damages for 8,000
mattresses, 7,000 slippers, and other related items
("products") valued at over $15 million.  The products were
donated by Plaintiff to Separate Defendant Waste to Charity,
Inc. ("WTC") for distribution to charitable organizations, but
allegedly misappropriated by Defendants.

Plaintiff's Second Amended Complaint is for replevin,
breach of contract, fraud, conversion, civil conspiracy to
commit fraud, and civil conspiracy to commit conversion.
Currently before the Court are: (A) Motion to Dismiss (Doc.
67) by Separate Defendants Eric Volovic and Howard Hirsch; (B)
Motion to Dismiss (Doc. 71) by Separate Defendants WTC and
Jack Fitzgerald; (C) Motion to Dismiss Count Six (Doc. 73) by

Separate Defendant Close Out Surplus and Savings, Inc. ("CSS"); (D) Motion to Dismiss (Doc. 76) by Separate Defendants Nelson Silva and Ernest Peia; (E) Motion to Dismiss (Doc. 96) by Separate Defendant Thomas Scarcello; along with supporting documents and the responses to the motions.  For the reasons set forth herein, all motions to dismiss are **DENIED**.

**BACKGROUND.**

Plaintiff, Tempur-Pedic International, Inc., is in the business of manufacturing, marketing, licensing, and distribution of mattresses, slippers and other comfort products.  Plaintiff distributes its products only through direct sales and through specialized, trained, and authorized distributors.  From November 2005, through October 2006, Plaintiff alleges it donated mattresses, slippers and pillows for distribution to the needy, including Hurricane Katrina Relief charities.  Plaintiff contracted with WTC to distribute the products to various charitable organizations.  (Doc. 1, Ex. 1).

The Charitable Donation Agreement provided, "[A]ll products donated by Tempur-Pedic are not to be resold, distributed for sale, or otherwise sold for profit in any venue."  Plaintiff contends the mattresses sent to WTC were contained in packaging distinguishable from the packaging used

2

in the ordinary course of business.  According to Plaintiff, the donated mattresses were individually wrapped in clear plastic and stacked on wooden pallets which is different than its usual manner of packaging.  Plaintiff contends this method of packaging was used exclusively for the mattresses sent to WTC for distribution to the Katrina-relief charities, making the mattresses identifiable to Plaintiff.  Plaintiff contends the donated pillows and slippers were distinctly packaged as well.

Plaintiff contends that beginning in March 2006, the products were sold by unauthorized dealers and sold in violation of the contract agreement.  Plaintiff contends WTC sold some of the products to US Warehousing ("USW"), a warehouse operator in Bowling Green, Kentucky, and that unauthorized sales were made in Bowling Green, Kentucky; Nashville, Tennessee; and Highlands Ranch, Colorado.  Separate Defendant Action Distributers, Inc., ("ADI") was also sold a portion of the products.

In February 2007, after being solicited by Separate Defendant Eric Volovic, an individual, identified as an unnamed Informant, met with Separate Defendants Volovic, Howard Hirsch, Thomas Scarcello, and Nelson Silva, at a warehouse in Booneville, Arkansas.  Prior to the meeting, the Informant approached the Federal Bureau of Investigation

("FBI") at the Fort Smith, Arkansas, office to discuss the upcoming warehouse meeting.  The FBI arrived during the meeting to conduct an investigation.  During the interviews, Hirsch admitted Tempur-Pedic donated the mattresses initially, but later the mattresses were legally sold to the individual from whom Hirsch purchased them.  Hirsch told the Informant he would provide a paper trail to demonstrate he had ownership of the mattresses but he did not.  Plaintiff was unsuccessful in having the Goods returned and then instituted this suit.

**STANDARD OF REVIEW.**

In ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the non-moving party.  *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir. 1996).  Complaints should be liberally construed in the plaintiff's favor and should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief."  *Rucci v. City of Pacific,* 327 F.3d 651, 652 (8th Cir. 2003) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

**ANALYSIS.**

Plaintiff has filed claims for replevin, breach of contract, fraud, conversion, civil conspiracy to commit fraud,

4

and civil conspiracy to commit conversion. To establish a prima facie case for replevin in Arkansas a plaintiff must "allege and prove that he is the owner of the property, or has a special ownership or interest therein, and that he is entitled to immediate possession of the property." *Garoogian v. Medlock*, 592 F.2d 997 (Ark. App. 1979).

To establish fraud, a Plaintiff must prove five elements: (1) a false representation of material fact; (2) knowledge or belief by the defendant that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance upon the representation; and (5) damage suffered as a result of that reliance. *Templeton v. United Parcel Service, Inc.*, 216 S.W.3d 563 (Ark. 2005).

For a claim of conversion, the requirement is a demonstration of exercise of dominion or control over property in violation of the rights of the owner or person entitled to possession. Conversion can only result from conduct intended to affect property. The intent required is not conscious wrongdoing but rather an intent to exercise dominion or control over the goods that is in fact inconsistent with the plaintiff's rights. *Grayson v. Bank of Little Rock*, 971 S.W.2d 788 (Ark. 1998).

A civil conspiracy is a combination of two or more persons to accomplish a purpose that is unlawful or oppressive, or to accomplish some purpose, not in itself unlawful, oppressive, or immoral by unlawful, oppressive or immoral means, to the injury of another. *Allen v. Allison*, 155 S.W.3d 682, 689 (Ark. 2004). A civil conspiracy is not actionable in and of itself, but a recovery may be had for damages caused by acts committed pursuant to the conspiracy. *Id*. A civil conspiracy is an intentional tort which requires specific intent to accomplish the contemplated wrong. *Id*. A conspiracy may be shown by direct evidence of an actual agreement or understanding between conspirators, but it may also be shown by circumstantial evidence. *Mason v. Funderburk*, 446 S.W.2d 543, 548 (Ark. 1969).

ERIC VOLOVIC and HOWARD HIRSCH

Plaintiff filed this suit for replevin, conversion, and civil conspiracy to convert the Goods against Separate Defendants Volovic ("Volovic") and Howard Hirsch ("Hirsch"). Volovic and Hirsch filed a Motion to Dismiss for lack of personal jurisdiction. Volovic and Hirsch contend they were agents for Broco Supply, Inc. ("Broco"), and that any acts committed as the subject of this lawsuit were committed within the scope of their employment under actual authority. They contend that Broco the principal is bound by the acts, not

6

Volovic and Hirsch.

Actual and apparent authority exist in an agency relationship.  Actual authority includes manifestations of assent made from the principal to the agent authorizing the agent to act on the principal's behalf.  *Asa-Brandt, Inc. v. ADM Investor Servs.*, 344 F.3d 738, 753 (8th Cir. 2003). Apparent authority focuses on the principal's representations to third parties.  *Id*. at 749.  Plaintiff contends Volovic and Hirsch are relying on the fiduciary or corporate shield doctrine to avoid liability.

The corporate shield doctrine provides that individuals performing acts in their corporate capacity are not subject to the personal jurisdiction of the court of that state for those acts.  *Barnett v. Kohler*, 2006 WL 616805 (W.D. Ark. 2006)(quoting *Torchmark Corp. v. Rice*, 945 F.Supp. 172, 176 (E.D. Ark. 1996)).  In *Barnett*, that Court decided, in sum, that "whether the 'fiduciary shield doctrine' ever was a part of Arkansas law, either before or after *Ripplemeyer*, has been rendered moot by the General Assembly's adoption of the recent amendment of the long-arm statute (Acts of Arkansas 1995, No. 486), which broadened its reach to the full extent permitted by federal law."

Plaintiff contends Volovic solicited an Informant over the phone and offered 3,300 allegedly new Tempur-Pedic

mattresses for sale at the price of $295 per mattress.[1]
Plaintiff contends these Separate Defendants were physically
present during a meeting to sell the mattresses at the
warehouse in Booneville, Arkansas, in February 2007.  Under an
agency analysis, the Separate Defendants would still be liable
personally as the alleged agency relationship was never
disclosed to Plaintiff, and any undisclosed relationships will
not free the agent of his liability.  Construing the facts in
favor of Plaintiff, the Court finds it has personal
jurisdiction over both Defendants.

WTC and JACK FITZGERALD

Separate Defendants WTC and Jack Fitzgerald
("Fitzgerald"), filed a Motion to Dismiss for lack of personal
jurisdiction or for failure to state a claim upon which relief
may be granted.  Plaintiff filed against these Separate
Defendants for replevin, fraud, conversion, civil conspiracy
to commit fraud, and civil conspiracy to convert the donated
goods.  WTC and Fitzgerald contend they lack sufficient
minimum contacts with the State of Arkansas for personal
jurisdiction to attach.

Fitzgerald contends he has been a resident of Florida
since March 2004, and prior to that was a resident of New

---

[1]     Plaintiff contends new Tempur-Pedic mattresses can sell at retail for as much as
        $6,399 per mattress.

Jersey.  He claims he has never "stepped foot" in Arkansas, unless he passed through Arkansas while on a road trip to California over fifteen years ago.  (Doc. 72, Ex. B).  WTC and Fitzgerald contend they never had any offices, facilities, bank accounts, telephone listings, or mailing addressees in the State of Arkansas.

A federal court in a diversity action may exercise jurisdiction over non-resident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004).  Because the long-arm statute of Arkansas confers jurisdiction to the fullest constitutional extent, the inquiry is limited to whether the exercise of personal jurisdiction comports with due process.  *Id*.  "Due process requires 'minimum contacts between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id*.  The Supreme Court has set forth two theories for evaluating minimum contacts, general and specific jurisdiction.   Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum.

*Id.*(quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 - 416 (1984)).  Both theories of personal jurisdiction require "some act by which the defendant purposely avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Id.*

If a court determines a defendant has minimum contacts with the forum state, it may then consider "whether the assertion of personal jurisdiction would comport with the notion of 'fair play and substantial justice.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  These factors are considered: (1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties."  *Dever*, 380 F.3d at 1073-1074.

Plaintiff contends there were transactions and deliveries from WTC and Fitzgerald to Scarcello and ADI, to include the 3,300 mattresses now in Arkansas.  Because a portion of the products are located in the State of Arkansas, and because all parties are equally inconvenienced, the Court finds WTC and Fitzgerald are subject to the long-arm statute of the State of Arkansas.  The sale and delivery of thousands of mattresses in

10

Arkansas could attach liability to the seller even without having physical contact with the State of Arkansas. Accordingly, the motion to dismiss for lack of personal jurisdiction is denied.

WTC and Fitzgerald move in the alternative to dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief may be granted.  The Second Amended Complaint alleges that the Goods of which Plaintiff has a property interest have been taken by the Separate Defendants, that they may still be in their possession or control, that they have been fraudulently bought and sold, that the Goods may have been converted, and that Plaintiff has demonstrated the value of the Goods.  Plaintiff alleged WTC and Fitzgerald fraudulently sold some of the Goods in violation of the Agreement with Plaintiff.  Construing the Complaint liberally in Plaintiff's favor, Plaintiff has met its pleading requirement with all claims against WTC and Fitzgerald.  The Second Amended Complaint contains numerous claims and allegations that include WTC and Fitzgerald in the conspiracy claims.  (¶¶ 17-43, 49-51).  The motion to dismiss is denied on this point as well.

CSS

Close Out Surplus and Savings, Inc. ("CSS"), filed a Motion to Dismiss Count Six (6) of Plaintiff's Second Amended

Complaint for failure to state a claim upon which relief may be granted.  CSS contends Plaintiff failed to adequately plead the civil conspiracy to commit conversion claim against CSS.

Plaintiff alleges in the Second Amended Complaint that certain Defendants, including CSS, diverted thousands of Tempur-Pedic's mattresses and other products intended for charity, for the purpose of selling those products for economic benefit and attempted to sell those products without permission or authority which resulted in damages.  (Doc. 57, ¶¶ 15 - 71, 109 - 113).  Construing the facts in Plaintiff's favor, the Court finds a properly supported claim for civil conspiracy has been alleged, and the motion to dismiss is denied.

ERNEST PEIA and NELSON SILVA

Plaintiff complained of replevin, conversion, and civil conspiracy against Separate Defendants Ernest Peia ("Peia") and Nelson Silva ("Silva").  Peia and Silva filed a Motion to Dismiss for lack of personal jurisdiction, or alternatively for failure to state a claim upon which relief may be granted. Both Separate Defendants are employees of CSS sued in their individual capacities.  Peia and Silva contend they are residents of the State of New Jersey and officers of CSS, a New Jersey corporation.  Peia and Silva contend they engaged in no relevant conduct outside their capacities as corporate

12

representatives of CSS and are, therefore, not subject to any personal jurisdiction in this matter.

Plaintiff contends the Court has both specific and general jurisdiction over Peia.  Plaintiff contends that Peia as the president and owner of CSS, has conducted business with Scarcello and his company, ADI, which is located in Arkansas, and negotiated directly with Scarcello's boss, Tony Alamo, who is in Arkansas.  Plaintiff contends that on February 20, 2007, after being served with notice of the temporary restraining order in this case, Peia contacted representatives of Tempur-Pedic in Arkansas regarding the mattresses in the Booneville Warehouse, and represented that he purchased the mattresses from Scarcello and ADI in Arkansas.  Peia, in his Reply (Doc. 95), contends he has not conducted business in Arkansas, rather CSS has.  Peia contends that CSS did deal with ADI and Scarcello, but this was while they were in New Jersey, not Arkansas.

Plaintiff has demonstrated that Peia may have personally negotiated for the Goods currently located in the the Booneville warehouse, and has alleged conspiratorial schemes including Peia personally.  It is not clear from the record who currently has possession over the Goods, Peia or CSS, but Plaintiff has alleged facts sufficient to connect Peia with Arkansas for his specific involvement in the case *sub judice*.

13

Accordingly, the Court has specific jurisdiction over Peia.

Plaintiff contends Silva is vice president of CSS and traveled from New Jersey to Arkansas to actively participate in the product inspection.  Plaintiff contends he attempted sale of a portion of the Goods and played an active role in the negotiations of the sale.  Silva, in his Reply (Doc. 95), contends one meeting and inspection in Arkansas is not enough to establish jurisdiction over him.  However, because the mattress transaction in Booneville, Arkansas, is a specific part of this case, the Court need not look any further. Construing the Complaint liberally in Plaintiff's favor, the Court finds specific jurisdiction over Silva properly lies within its jurisdiction.

Peia and Silva also move the Court to dismiss the Second Amended Complaint for failure to state a claim.  Plaintiff brought three causes of action against Peia and Silva: replevin, conversion, and civil conspiracy.  The Second Amended Complaint sets out the fraudulent buying and selling of mattresses against the express language of Plaintiff's Agreement with WTC, which consequently included Peia and Silva's possession and possible conversion of the Goods.  As to the civil conspiracy claims, the Second Amended Complaint provides ample detail outlining Peia's and Silva's involvement in the alleged schemes.  Accordingly, Plaintiff has

14

established its *prima facie* case on these causes of action,
and the motion to dismiss is denied on this point.

THOMAS SCARCELLO

Separate Defendant Thomas Scarcello ("Scarcello") filed
a Motion to Dismiss Plaintiff's claim for civil conspiracy to
commit fraud asserted in the fifth claim for relief of the
Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).
Plaintiff filed its Second Amended Complaint against Scarcello
for replevin, conversion, civil conspiracy to convert, and
civil conspiracy to commit fraud.   Scarcello contends
Plaintiff failed to allege with requisite specificity that
Scarcello knew of WTC and Fitzgerald's alleged fraud, that
Scarcello had the specific intent to further the alleged fraud
or that Scarcello had any knowledge of defendants WTC and
Fitzgerald prior to WTC's alleged entering into the fraudulent
Agreement.

Plaintiff has demonstrated facts sufficient to establish
its *prima facie* case.   (*See* CSS discussion, *supra*).   The
Second Amended Complaint describes how Scarcello, Fitzgerald,
ADI, and WTC conspired to divert thousands of mattresses for
the agreed upon purpose of selling those products for the
economic benefit of Scarcello, Fitzgerald, ADI, and WTC, who
sought to improperly sell those products without permission or
authority when such products were intended exclusively for

15

charitable purposes resulting in damages to Plaintiff.  (Doc. 57, ¶¶ 15-71, 103-108).  The Court finds Plaintiff's claim against Scarcello survives the motion to dismiss.

**CONCLUSION.**

Accordingly, for the reasons set forth herein, the motions to dismiss set out in Docs. 67, 71, 73, 76, and 96 are **DENIED.**

Additionally, the Court finds the motions set out in Docs. 30 and 32 **MOOT** because of the filing of the Second Amended Complaint.

IT IS SO ORDERED this 24th day of July, 2007.


_/s/ Robert T. Dawson_____
HONORABLE ROBERT T. DAWSON
UNITED STATES DISTRICT JUDGE