```
              IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF ARKANSAS
                       FORT SMITH DIVISION
```

TEMPUR-PEDIC
INTERNATIONAL, INC.                                       PLAINTIFF

     v.             Civil No. 07-2015

WASTE TO CHARITY, INC.;
BROCO SUPPLY, INC.; JACK
FITZGERALD; ERIC VOLOVIC;
HOWARD HIRSCH; THOMAS SCARELLO;
NELSON SILVA; CLOSE OUT
SURPLUS AND SAVINGS, INC.;
and ERNEST PEIA                                           DEFENDANTS

## MEMORANDUM OPINION & ORDER

Tempur-Pedic International, Inc., ("Tempur-Pedic") filed its Complaint (Doc. 1) on February 13, 2007, an Amended Complaint (Doc. 5) on February 21, 2007, and its Second Amended Complaint (Doc. 57) on April 13, 2007. Plaintiff seeks recovery of, or money damages for, 8,000 mattresses, 7,000 slippers, and other related items alleged to have a value of over $15 million. The products were donated to Separate Defendant Waste to Charity, Inc. ("WTC") for distribution to charitable organizations, but allegedly misappropriated by Defendants.

On May 3, 2007, Separate Defendant Close Out Surplus and Savings, Inc. ("CSS") filed its Answer to Tempur-Pedic's Second Amended Complaint (Doc. 75), and its Amended Answer and Counter-Claim (Doc. 84) on May 15, 2007. Currently before the Court is Tempur-Pedic's Motion to Dismiss the Counter-Claims (Doc. 100) of Separate Defendant CSS. For the reasons

reflected herein, the motion to dismiss is **GRANTED**.

**BACKGROUND.**

Plaintiff, Tempur-Pedic International, Inc., is in the business of manufacturing, marketing, licensing, and distributing mattresses, slippers and other comfort products. Plaintiff distributes its products only through direct sales and through specialized, trained, and authorized distributors. From November 2005, through October 2006, Plaintiff alleges it donated mattresses, slippers, and pillows for distribution to the needy. Plaintiff contracted with WTC to distribute the Goods to various charitable organizations. (Doc. 1, Ex. 1).

The Charitable Donation Agreement provided, "[A]ll products donated by Tempur-Pedic are not to be resold, distributed for sale, or otherwise sold for profit in any venue." Plaintiff contends the mattresses sent to WTC were contained in packaging distinguishable from the packaging used in the ordinary course of business. According to Plaintiff, rather than the wrapping of mattresses in a hypo-allergenic cloth and packing in cardboard boxes, the donated mattresses were individually wrapped in clear plastic and stacked on wooden pallets. Plaintiff contends this method of packaging was used exclusively for the mattresses sent to WTC for distribution to the Katrina-relief charities. Plaintiff contends the donated pillows and slippers were also distinctly

2

packaged.

Plaintiff contends that beginning in March 2006, the products were sold by unauthorized dealers in violation of the contract agreement. Plaintiff contends WTC sold some of the products to US Warehousing ("USW"), a warehouse operator in Bowling Green, Kentucky, and contends unauthorized sales were made in Bowling Green, Kentucky; Nashville, Tennessee; and Highlands Ranch, Colorado. Separate Defendant Action Distributers, Inc., ("ADI") was also sold a portion of the products.

In February 2007, after being solicited by Separate Defendant Eric Volovic, an individual, identified as an unnamed Informant, met with Separate Defendants Volovic, Howard Hirsch, Thomas Scarcello, and Nelson Silva, at a warehouse in Booneville, Arkansas. Prior to the meeting, the Informant approached the Federal Bureau of Investigation ("FBI") at the Fort Smith, Arkansas, office to discuss the upcoming warehouse meeting. The FBI arrived during the meeting to conduct an investigation. Tempur-Pedic was unable to recover the products and thereafter filed its Complaint.

CSS is a New Jersey corporation with its principal place of business in New Jersey. CSS is a liquidator that purchases and sells large volumes of closeout merchandise, both nationally and internationally. CSS sells its merchandise to

3

hundreds of different companies, including at trade shows, and has been in business for approximately twelve years. CSS purchases merchandise from various sources, including Action Distributors, Inc. ("ADI"). CSS contends it purchased merchandise from ADI without any problems for approximately twelve years. According to CSS, only about five percent ("5%") of CSS's merchandise comes from ADI. CSS purchased used mattresses from ADI for approximately five years, including Tempur-Pedic brand mattresses. CSS has, in the ordinary course of business, resold used Tempur-Pedic brand mattresses during this same five year period.

CSS contends that Tempur-Pedic knew for approximately five years that CSS purchased and resold used Tempur-Pedic brand mattresses. On about October 12, 2006, CSS purchased 4,000 used Tempur-Pedic mattresses from ADI. Specifically, CSS purchased 500 Classic Bed California King Size mattresses, 1,000 Classic Bed King Size mattresses, 1,300 Classic Bed Queen Size mattresses, 550 Classic Bed Full Size mattresses, and 650 Classic Bed Twin Size mattresses. CSS contends ADI advised CSS the mattresses were used foam mattresses that had been returned to Tempur-Pedic pursuant to Tempur-Pedic's policy that a customer could return a purchased mattress for a full refund. Because the returned mattresses were used, Tempur-Pedic could no longer sell the mattresses as new,

according to ADI. CSS contends that some of the mattresses CSS purchased from ADI were stained or otherwise in disrepair.

CSS paid ADI $500,000 for the used mattresses, which CSS contends was consistent with other bulk purchases. Broco Supply agreed to purchase 3,000 of the used mattresses from CSS for $630,000. (Doc. 84, Ex. 1). CSS contends that Broco Supply reached an agreement to sell the 3,000 mattresses to Mattress Mart of Metairie, Louisiana. CSS further contends that Wes Williams initially represented Mattress Mart in its discussions with Broco Supply, and that Williams is the person referred to by Tempur-Pedic as its "Informant." CSS also asserts that Tempur-Pedic hired private investigator Keith Moore to communicate with both Mattress Mart and Williams, and referred to Moore as its "Consultant" in the Second Amended Complaint. CSS contends that Mattress Mart, Williams, and Moore negotiated for, and signed a deal to buy, mattresses from Broco Supply, but when Moore advised Williams and Mattress Mart that the mattresses were stolen, the deal fell through.

CSS contends that Tempur-Pedic's claims against CSS are without merit because the mattresses are not from the donated set of mattresses, and even if Tempur-Pedic could show that, CSS would be a bona-fide purchaser. According to CSS, it has suffered damages because of the preliminary injunction as they

5

were prevented from selling mattresses at a February 2007 trade show in Las Vegas, Nevada.

The Amended Answer with Counter-Claim was filed by CSS for (1) tortious interference with business expectancies, (2) tortious interference with CSS-Broco Supply contract, (3) tortious interference with Broco Supply-Mattress Mart contract, (4) slander of title, (5) breach of the Broco Supply-Mattress Mart contract, and (6) punitive damages.

**STANDARD OF REVIEW.**

In ruling on a motion to dismiss, the district court must accept the allegations contained within the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the non-moving party.  *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir. 1996).  Complaints should be liberally construed in the plaintiff's favor and should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief."  *Rucci v. City of Pacific,* 327 F.3d 651, 652 (8th Cir. 2003) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

**ANALYSIS.**

<u>Tortious Interference with Business Expectancies - Injunction</u>.

CSS contends it had a valid business expectancy to sell its mattresses in the February 2007 Las Vegas trade show.  CSS

contends that Tempur-Pedic intentionally interfered with its business by filing for a preliminary injunction to prevent the sale of mattresses.  CSS contends the claims filed by Tempur-Pedic in its lawsuit were brought in bad faith and for an improper motive.  CSS contends that the direct and proximate result of the interference by Tempur-Pedic resulted in damage a CSS was unable to realize profits from sales at the trade show.

Under Arkansas law, in order to state a claim for tortious interference with business expectancy, CSS must allege: (1) the existence of a business expectancy; (2) Tempur-Pedic's knowledge of that expectancy; (3) intentional interference inducing or causing termination of the expectancy; and (4) resultant damage to CSS. *Brown v. Tucker*, 330 Ark. 435, 439-440 (1997); *Hunt v. Riley*, 322 Ark. 453, 458 (1995).  "For an interference to be actionable, it must be improper." *Hunt*, 322 Ark. at 458.  Tempur-Pedic contends that CSS made only two factual allegations and neither are adequate to support its claim for tortious interference.

Tempur-Pedic contends that CSS failed to name the specific trade show where it might have sold mattresses. Tempur-Pedic contends that CSS sells various products, including ceiling fans, flooring tiles, apple juice and toasters.  CSS has not demonstrated that Tempur-Pedic's filing

7

for an injunction was improper. CSS failed to demonstrate a particular business contract or expectancy, and consequently failed to demonstrate damages. *See Hunt*, 322 Ark. at 458.

The standard requires CSS to allege more than conclusory statements of contractual relationships or business expectancies. The Court finds Tempur-Pedic's motion to dismiss should be granted as to CSS's counterclaim for tortious interference with business expectancies.

<u>Tortious Interference with CSS-Broco Supply Contract</u>.

CSS contends it contracted to sell 3,000 mattresses to Broco Supply. CSS contends that Tempur-Pedic knew of the contract, and through its agents incorrectly told Mattress Mart that CSS and Broco Supply did not hold valid title to the mattresses. CSS contends the result was that Mattress Mart did not perform its agreement to purchase mattresses from Broco Supply, and Broco Supply did not perform its agreement to purchase mattresses from CSS. CSS also contends Tempur-Pedic encouraged Mattress Mart to contract with Broco Supply under false pretenses.

Under Arkansas law, CSS must allege: (1) the existence of a valid and enforceable agreement; (2) Tempur-Pedic's knowledge of that agreement; (3) intentional interference inducing or causing termination of that agreement; (4) resultant damage to CSS; and (5) that the conduct of Tempur-

Pedic was "improper." *Shellnutt v. Laird*, 359 Ark. 516 (2004).

Tempur-Pedic contends no valid and enforceable agreement existed between CSS and Broco as evidenced by the counterclaim of Broco Supply (Doc. 28) wherein Broco Supply alleges that "contingent upon the purchase agreement between Broco and [Tempur-Pedic] a conditional sale of the product was made between Broco and CSS for $630,000." Tempur-Pedic also points out that the counter-claim states that Broco Supply "would have been deemed" a bona fide purchaser upon completion of the agreement, an indication that the deal was not complete.

Tempur-Pedic contends that CSS has not sufficiently alleged the second factor - knowledge of the agreement - and CSS's claim must also fail on this point. Tempur-Pedic contends there was no communication of the existence of any agreement from any of the Separate Defendants. Tempur-Pedic contends that knowledge has not been sufficiently alleged, and CSS is unable to maintain its claim for intentional interference with the contract.

The Court agrees that CSS has failed to properly allege knowledge of its agreement. Damages cannot be certain because no definite contract was in existence. Tempur-Pedic's motion to dismiss this portion of the counterclaim is granted.

<u>Tortious Interference with Broco Supply-Mattress Mart</u>

9

Contract.

CSS contends that Broco Supply contracted to sell 3,000 mattresses to Mattress Mart which Broco Supply had agreed to purchase from CSS making CSS a third-party beneficiary of the contract between Broco Supply and Mattress Mart. CSS reiterates the same facts and legal arguments as set forth above.

Tempur-Pedic contends there was no valid or enforceable agreement, because the invoice referred to by CSS is not an agreement. *See*, *e.g. Morrison v. Blanda*, 226 Ark. 514, 519 (1956)(holding an invoice is not a contract itself). Tempur-Pedic contends the invoice is nothing more than a statement of the terms of the purchase agreement in the event that the option to purchase the mattresses was exercised. *See Whitson v. Tinkle*, 1999 WL 172162, at *2-3 (Ark. App. 1999)(dismissing contract claim where there was offer but no acceptance and holding that, "the parties' partial performance failed to overcome the general principle that, without an offer and acceptance, there can be no contract").

After reviewing the evidence in a light most favorable to CSS, the Court can only conclude that a *prima facie* case has not been pled. The allegations of CSS are too attenuated and the counterclaim fails to include sufficient facts for the Court to conclude a valid contract existed. The Court finds

10

the mere conclusion that Tempur-Pedic intentionally interfered with arrangements between Broco Supply and Mattress Mart to be untenable and it warrants dismissal.  Tempur-Pedic's motion to dismiss this claim is also granted.

<u>Slander of Title</u>.

CSS contends it holds good title to the mattresses it purchased from ADI in October 2006.  CSS contends Tempur-Pedic, through its agents, incorrectly told Mattress Mart and Williams that CSS did not hold proper title to the mattresses.  CSS contends this caused Mattress Mart to forego its agreement with Broco Supply which in turn damaged CSS.

Under Arkansas law, "slander of title is an action based on malicious publication of a false matter that disparages the title to property."  *Fleming v. Cox Law Firm*, 363 Ark. 17, 20 (Ark. 2005).  Even though malice may be inferred from knowingly false statements made by the speaker, malice may not be so inferred if the speaker is making a "bona fide claim of title . . . ."  *Id*.  In an action for slander of title, plaintiff must prove the defendant acted maliciously in uttering words in question.  *Sinclair Refining Co. v. Jones Super Service Station*, 188 Ark. 1075 (Ark. 1934).  The Court finds any publications made by Tempur-Pedic were *bona fide* claims of title to the property, and malice is accordingly not within the claim of CSS.

The Court finds a *prima facie* case is not supported in the counterclaim of CSS, and accordingly the motion to dismiss is GRANTED on this point.

<u>Breach of the Broco Supply-Mattress Mart Contract</u>.

CSS contends that Broco Supply contracted to sell 3,000 mattresses to Mattress Mart, but that this did not occur because of the intentional interference by Tempur-Pedic. Further, CSS contends that Mattress Mart was actually the agent of Tempur-Pedic because Tempur-Pedic paid the down payment on the 3,000 mattresses, and therefore CSS argues that Tempur-Pedic essentially breached the agreement with Broco Supply. Tempur-Pedic contends it is not an actual party to the agreement, that no valid contract existed, and that CSS cannot bring a tortious interference claim and a breach of contract claim for the same agreement.

Under Arkansas law, "although a plaintiff may not recover for the same act in both contract and tort, and must ultimately choose among remedies sought, it is not wrong for concurrent allegations to be pursued." *Albright v. Southern Farm Bureau Life Ins. Co.*, 327 Ark. 715, 719 (Ark. 1997). Accordingly, the Court finds it permissible for CSS to bring both a contract and tort claim for the same action by Tempur-Pedic. However, the Court finds CSS failed to establish its breach of contract claim. CSS has not demonstrated that

Tempur-Pedic was a party to the contract or that Tempur-Pedic has express obligations thereunder.  CSS has not shown that Tempur-Pedic violated those obligations, or that damages resulted from any violations.  *See Williams v. Black Lumber Co.*, 275 Ark. 144 (1982).  Where conclusions of law are pled alone, absent any stated factual basis, the complaint is insufficient.  *Id*.

As CSS failed to show Tempur-Pedic was a party to the alleged contract, and, moreover, because the Court has determined no contract existed between CSS and Broco Supply, the motion to dismiss CSS's claim on this point is GRANTED.

Punitive Damages.

CSS contends Tempur-Pedic knew or should have known its conduct with CSS would result in damages, and it continued such conduct in disregard for the consequences from which malice may be inferred.  CSS also contends that Tempur-Pedic pursued a course of conduct towards CSS for the purpose of causing damage, and accordingly CSS should be awarded damages.

The Court has found that CSS failed to establish its *prima facie* case as to any of its causes of action and the request for punitive damages is moot.

**CONCLUSION.**

Accordingly, for the reasons reflected herein, the motion to dismiss (Doc. 100) the counterclaim is **GRANTED,** and the

counterclaim of CSS (Doc. 84) is DISMISSED WITH PREJUDICE.

Additionally, the Court finds the Motion to Dismiss Broco Supply's counterclaim (Doc. 50) is DENIED as MOOT.

IT IS SO ORDERED this 27th day of July, 2007.

/s/ Robert T. Dawson
HONORABLE ROBERT T. DAWSON
UNITED STATES DISTRICT JUDGE