IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


TEMPUR-PEDIC
INTERNATIONAL, INC.                                           PLAINTIFF


        v.              Civil No. 07-2015


WASTE TO CHARITY, INC.; BROCO
SUPPLY, INC.; JACK FITZGERALD;
ERIC VOLOVIC; HOWARD HIRSCH;
THOMAS SCARCELLO; NELSON SILVA;
CLOSE OUT SURPLUS AND SAVINGS,
INC.; ERNEST PEIA, and ACTION
DISTRIBUTORS, INC.                                           DEFENDANTS


**MEMORANDUM OPINION & ORDER**

        Now on this 6th day of February 2008, there comes on for

consideration Close Out Surplus and Savings, Inc., Ernest Peia and

Nelson Silva's (CSS Defendants) Motion for Summary Judgment and

supporting documents (Docs. 158-60), Plaintiff's Response (Docs.

189-191) and CSS Defendants' Reply (Doc. 199); Thomas Scarcello's

Motion for Summary Judgment and supporting documents (Docs.

162-64), Plaintiff's Response (Docs. 195-97) and Scarcello's Reply

(Doc. 202); Plaintiff's Motion for Partial Summary Judgment and

supporting documents (Docs. 165, 173-74) and responses from CSS

Defendants (Docs. 179-181); Broco Supply, Inc., Howard Hirsch, and

Eric Volovic (Broco Defendants)(Docs. 182, 184 & 187); Thomas

Scarcello (Docs. 185-86) and Plaintiff's Reply (Doc. 198); Broco

Defendants' Motion for Summary Judgment and supporting documents

AO72A
(Rev. 8/82)

(Docs. 175-77), Plaintiff's Response (Docs. 192-194) and Broco Defendants' Reply (Docs. 200-01).[1]

**BACKGROUND.**

The following facts are undisputed except where noted:

Plaintiff manufactures, markets and distributes mattresses, pillows and similar products. CSS is a liquidator that sells large volumes of closeout merchandise, both nationally and internationally. Peia is CSS's president. Thomas Scarcello is CSS's contact at Action Distributors, Inc. ("ADI"), a company that buys and sells merchandise. Peia and Scarcello met some fifteen years ago. CSS contends since 2000 or 2001, it purchased numerous mattress from ADI. Plaintiff contends it is unclear whether CSS purchased mattresses from ADI or from Scarcello in his individual capacity. In any event, CSS contends it sold used Tempur-Pedic mattresses without incident until this litigation.

Scarcello contends he began purchasing products from Waste to Charity (WTC), on behalf of ADI, several years prior to this litigation and that WTC always issued a purchase order and invoice. According to Scarcello, some of the purchase orders or

---

[1]     On August 3, 2007, the U.S. District Clerk made an entry of default as to Separate Defendant Action Distributors, Inc. On August 8, 2007, Plaintiff filed a motion for default as to ADI. On August 16, 2007, the Court granted the motion with respect to liability and stated it would determine the amount of damages and costs to be awarded against ADI prior to the resolution of this case. The case remains stayed against Separate Defendants Waste to Charity and Jack Fitzgerald due to their respective bankruptcy filings.

AO72A
(Rev. 8/82)

invoices stated that pickups were to be made in the name of WTC and that the bill of lading should be faxed to WTC upon arrival.

Thomas Scarcello was in the business of buying and selling wholesale merchandise and purchased Tempur-Pedic mattresses from WTC on behalf of ADI.  On or about March 2005, Scarcello, on behalf of ADI, began purchasing Tempur-Pedic mattresses from WTC. Scarcello would arrange and pay for delivery of the mattresses from Plaintiff's warehouse.  Scarcello contends that the mattresses were used and had to be cleaned before resale at ADI's expense.

In 2003, Plaintiff began furnishing products to WTC for charitable purposes.  On November 14, 2005, WTC signed a Charitable Donation Agreement concerning the treatment of approximately 7800 mattresses, among other products.  Under the Donation Agreement, WTC agreed, among other things, that "all products donated by Tempur-Pedic are not to be resold, distributed for sale, or otherwise sold for profit in any venue."  WTC further agreed that, should it wish to dispose of any Tempur-Pedic products, it would notify Plaintiff and give Plaintiff "an opportunity to retrieve them or designate their disposition.

On October 12, 2006, CSS purchased 4,000 mattresses from ADI for $500,000.00.[2]  The purchase price CSS paid was consistent with other bulk purchases CSS made.  CSS contends some of the

---

[2]Plaintiff contends the mattresses were purchased from Scarcello, individually.

Page 3 of 12

mattresses were stained or otherwise in disrepair, a fact which Plaintiff disputes. Plaintiff contends these mattresses were covered by the Donation Agreement.

In late 2006 or early 2007, Broco Supply contacted CSS and indicated it wanted to purchase Tempur-Pedic mattresses from CSS for it to resell. Broco Supply primarily brokers building materials but also buys and sells other merchandise. Peia became aware of Broco Supply when he met Eric Volovic and Howard Hirsch at a trade show some two years earlier. CSS previously sold some ceiling fans to Broco Supply but had no contact for several months, until Broco Supply contacted CSS about purchasing the mattresses.

CSS initially agreed to sell either 3000 or 4000 mattresses to Broco Supply for $630,000. Broco Supply planned to sell the mattresses to a business, Mattress Mart. Broco Supply required a good faith deposit of $10,000 from Mattress Mart and was negotiating a purchase price of $975,000.

Broco Supply told CSS it had an export customer who would pay for the mattresses. CSS advised Broco Supply not to use the Tempur-Pedic name or represent that it was an authorized Tempur-Pedic dealer, that the mattresses were not new and came in poly bags with no warranties. Broco Supply indicated that its customer wanted to inspect the mattresses, and a meeting was arranged at a warehouse in Booneville, Arkansas.

AO72A
(Rev. 8/82)

Silva, a salesman for CSS, attended the inspection along with Hirsch and Volovic for Broco Supply.  Scarcello was present as a representative of the warehouse.  The Mattress Mart representative was Keith Moore, a consultant for a business intelligence company who was posing as a businessman.  Moore was hired by Plaintiff to investigate unauthorized sales of Plaintiff's mattresses.  While at the warehouse, agents of the Federal Bureau of Investigation arrived, searched the warehouse and questioned the parties.  Shortly after this meeting, Plaintiff filed suit against WTC, Broco Supply, Fitzgerald, Volovic, Hirsch, Scarcello and Silva.  Plaintiff later added Peia, CSS and ADI as defendants.

The CSS Defendants, Broco Defendants and Scarcello move for summary judgment on Plaintiff's claims for replevin, conversion and civil conspiracy to commit conversion.  Scarcello also moves for summary judgment on Plaintiff's claim of civil conspiracy to commit fraud.  The CSS Defendants move, in the alternative, for summary judgment on Plaintiff's claim for money damages.

**STANDARD OF REVIEW.**

A motion for summary judgment will be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A "material" fact is one "that might affect the outcome of the suit under the governing law . . . ."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A "genuine" issue of

AO72A
(Rev. 8/82)

material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party. *Anderson,* 477 U.S. at 248. In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970).

If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," and "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 256-57 (citing Fed. R. Civ. P. 56(e)).

In order to withstand a motion for summary judgment, plaintiffs must substantiate their allegations with "sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Gregory v. Rogers,* 974 F.2d 1006, 1010 (8th Cir. 1992), *cert. denied,* 507 U.S. 913 (1993). A mere scintilla of evidence is insufficient to avoid summary judgment. *Moody v. St. Charles County,* 23 F.3d 1410, 1412 (8th Cir. 1994).

AO72A
(Rev. 8/82)

**ANALYSIS.**

The CSS Defendants, Broco Defendants and Scarcello contend they are entitled to summary judgment as to Plaintiff's claims for replevin, conversion and civil conspiracy as they were good-faith purchasers for value; therefore, any interest they have in the mattresses are superior to Plaintiff's interest. Scarcello further moves for summary judgment on Plaintiff's civil conspiracy to commit fraud claim on the same theory and that he had no knowledge of the agreement between Plaintiff and WTC. Alternatively, the CSS Defendants move the Court to enter judgment for the defendants on Plaintiff's claim for money damages as the evidence of damages is inadequate to present to a finder of fact.

**A.   Void/Voidable Title**

Plaintiff contends that Waste to Charity never acquired title to the donated mattresses as it never took physical possession of the mattresses and never received any title documents; therefore, none of the defendants acquired title to the mattresses they purchased. The moving defendants contend that WTC had voidable title to the mattresses and could pass "good title to a good faith purchaser for value." Ark. Code Ann. § 4-2-403(1).

The Uniform Commercial Code applies to all "transactions in goods." Ark. Code Ann. 4-1-201. Section 4-2-401 provides, in pertinent part:

> (2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller

completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest in the bill of lading:

(a) if the contract requires or authorizes the seller to send the good to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

(b) if the contract requires delivery at destination, title passes on tender there.

Ark. Code Ann. § 4-2-401(2)(a)-(b).

Section 4-2-403 provides, in pertinent part:

(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased.  A person with voidable title has power to transfer a good title to a good faith purchaser for value.  When goods have been delivered under a transaction of purchase the purchaser has such power even though

(a) the transferor was deceived as to the identity of the purchaser; or

(b) the delivery was in exchange for a check which is later dishonored; or

(c) it was agreed that the transaction was to be a "cash sale"; or

(d) the delivery was procured through fraud punishable as larcenous under the criminal law.

Ark. Code Ann. § 4-2-203.

Absent exigent circumstances, one who purchases from a thief acquires no title as against the true owner.  *Midway Auto Sales, Inc. v. Clarkson*, 29 S.W.3d 788 (Ark. App. 2000)(citation

AO72A (Rev. 8/82)

omitted).  However, under Section 4-2-403, when property obtained by fraud is conveyed to a good faith purchaser for value, the purchaser obtains good title.  *Id*.

The *Midway* court explained the distinction between "void" and "voidable" title:

> Under 2-403, voidable title should be distinguished from void title.  A thief, for example, "gets" only void title and without more cannot pass any title to a good faith purchaser.  "Voidable title" is a murky concept.  The Code does not define the phrase.  The comments do not even discuss it.  Subsections (1)(a)-(d) of 2-403 clarify the law as to particular transactions which were "troublesome under prior law."  Beyond these, we must look to non-Code state law.  In general voidable title passes to those who lie in the middle of the spectrum that runs from best faith buyer at one end to robber at the other.  These are buyers who commit fraud, or are otherwise guilty of naughty acts (bounced checks), but who conform to the appearance of a voluntary transaction; they would never pull a gun or crawl in through a second story window.  Presumably these fraudulent buyers get voidable title from their targets, but second story men get only void title because the targets of the fraud are themselves more culpable than the targets of the burglary.
>
> Subsection (1)(b) of 2-403 deals with a more common occurrence: the "rubber check."  Even when Bert Buyer pays Sam Seller with a check that returns to Sam marked "NSF," a good faith purchaser from Bert takes good title.
>
> Subsection (1)(d) of 2-403 provides that even where delivery was procured through criminal fraud, voidable title passes.  Thus if Bert acquired goods from Sam with a forged check, a good faith purchaser from Bert would obtain good title.

*Midway Auto Sales*, 29 S.W.3d 788 (Ark. App. 2000)(*quoting* James J. White and Robert S. Summers, *Uniform Commercial Code* § 3-12 at 187-89 (4 ed. 1995)).

Page 9 of 12

It is undisputed that Plaintiff delivered the mattresses to its warehouse in South Carolina and provided WTC with "release numbers" to allow it to pick up the mattresses. Plaintiff's performance was complete, and title passed to WTC at that time. Accordingly, the Court finds that WTC acquired voidable title in connection with the mattresses sufficient to transfer good title to a good faith purchaser for value. Accordingly, Plaintiff's Motion is DENIED, and the defendants' respective motions are GRANTED IN PART.

## B. Good-Faith Purchaser for Value

If the defendants can show that they were good-faith purchasers for value, they would have good title to the mattresses and be entitled to judgment as a matter of law.

"Good faith" is defined to mean "honesty in fact in the conduct or transaction concerned." Ark. Code Ann. § 4-1-201(19). Whether a party acted in good faith in a commercial transaction is a question of fact. *See Adams v. First State Bank*, 778 S.W.2d 611 (1989).

The Court finds there is a genuine issue of fact as to whether the defendants were good faith purchasers for value sufficient to preclude summary judgment. Accordingly, Plaintiff's Motion is DENIED in its entirety and the defendants' motions are DENIED IN PART.

Page 10 of 12

AO72A
(Rev. 8/82)

## C.   Damages

The CSS Defendants further contend they are entitled to summary judgment on Plaintiff's claim for money damages due to insufficient proof of damages or appropriate calculation of damages.  The Court agrees with the defendants that the evidence produced thus far as to any damages caused by these defendants is scant.  However, the motion on this issue is DENIED at this time without prejudice to the defendants' rights to renew it at trial.

**CONCLUSION.**

The Court finds that Plaintiff's Motion (Doc. 165) is DENIED in its entirety and the defendants' respective motions for summary judgment (Docs. 158, 162 & 175) should be GRANTED IN PART AND DENIED IN PART.  The Court finds that genuine issues of fact exist, including but not limited to, whether Defendants were on notice of facts sufficient to preclude them from being good faith purchasers for value.

The bench trial of this matter is rescheduled for **Monday, October 6, 2008 at 9:00 a.m.**  The Court is hopeful that this will allow a sufficient period of time for Separate Defendants Waste to Charity and Jack Fitzgerald to conclude their bankruptcy proceedings in order that a full resolution may be had of this matter.

Page 11 of  12

**AO72A**
**(Rev. 8/82)**

IT IS SO ORDERED this 6th day of February, 2008.

_/s/ Robert T. Dawson_
HONORABLE ROBERT T. DAWSON
UNITED STATES DISTRICT JUDGE

Page 12 of  12

**AO72A**
**(Rev. 8/82)**